IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TRACY MORTON, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 04-1194-KI |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

SHARON MAYNARD
Swanson, Thomas and Coon
820 S.W. Second Ave. Suite 200
Portland, OR 97204

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

MICHAEL McGAUGHRAN
Regional Chief Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, District Judge:

Plaintiff Tracy Morton seeks judicial review of the Social Security Commissioner's final decision denying her application for supplemental social security income (SSI) benefits under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 1383(c).  The Commissioner's decision is affirmed and the case dismissed.

## BACKGROUND

Born August 31, 1970, Morton reports leaving school at eighth grade, obtaining a GED "about ten years ago," and completing a clerical skills course organized by Goodwill Industries. Tr. 69, 215.[1]  She worked intermittently as an office clerk between 1993 and 1998, with no other work history.  Tr 85.

Morton states that she was first bothered by her endometriosis, fibromyalgia and chronic pain in April 1998. Tr. 84. She contends she has been disabled and unable to work because of these impairments since January 3, 2001.  Tr. 84.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential  process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 416.920(a); *Bowen v.*

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket #4).

2 - OPINION AND ORDER

*Yuckert*, 482 U.S. 137, 140 (1987).  Morton challenges the ALJ's evaluation of the evidence and his conclusions at step five.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920(a)(4)(v).

The initial burden of establishing functional limitations rests upon the claimant.  If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity.  *Yuckert*, 482 U.S. at 141-2; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §  416.966.

## THE ALJ'S FINDINGS

The ALJ found Morton's ability to work limited by her degenerative disk disease and obesity.  Tr. 16, 20.  The ALJ assessed Morton's's RFC as follows:

> The claimant has the following residual functional capacity. She can
> lift and/or carry a maximum of twenty pounds occasionally and ten

> pounds frequently.  She can stand and/or walk for up to six hours
> total out of an eight hour work day and sit for up to six hours out of
> an eight hour work day, as long as she has the option to sit or stand.
> She can only occasionally reach overhead, use [a] ladder, ropes or
> scaffolds, bend crouch and crawl.  She can perform simple work with
> no more than three steps, and she should only have occasional contact
> with the public or with coworkers.  She has no environmental, visual,
> hearing, or speaking limitations.

Tr. 20.

At step five, the ALJ found that Morton's RFC did not preclude all work in the national

economy.  Drawing from the vocational expert's testimony, the ALJ identified three examples of

work Morton could perform: laundry worker, laundry folder, or receptionist.  Tr. 21.

Accordingly, the ALJ determined that Morton was not disabled under the Act at any time through

the date of his decision.  Tr. 21.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d

1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts

from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

*citing Martinz v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). This court must affirm the

Commissioner if her decision is supported by substantial evidence in the record and if the ALJ

applied correct legal standards. *Batson*, 359 F.3d at 1193. The reviewing court "may not

substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the

Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also*

*Batson*, 359 F.3d at 1193.


## DISCUSSION

Morton contends that the ALJ failed to reach an accurate RFC assessment because he

improperly discredited testimony of two lay witnesses. She also claims the ALJ relied on

inadequate vocational testimony in relying upon the disputed RFC assessment.

## 1. Morton's Credibility

The ALJ's reasoning for suspecting Morton's credibility is based upon her established

narcotic-seeking behavior and her alleged attempts to sell her prescription opiates.  Tr. 17.  Her

credibility in turn influences interpretation of her medical record and statements given by other

witnesses, discussed below.

The ALJ must provide clear and convincing reasons for discrediting a claimant's

testimony regarding severity of symptoms.  *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996).

The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that

the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748,

750 (9th Cir. 1995).  In construing his findings, the ALJ may consider objective medical evidence

and the claimant's treatment history, as well as the claimant's daily activities, work record, and

observations of physicians and third parties with personal knowledge of the claimant's functional

limitations.  *Smolen*, 80 F.3d at 1284.  Additionally, the ALJ may employ ordinary techniques of

credibility evaluation, such as weighing inconsistent statements regrading symptoms by the

claimant. *Id*.

The ALJ found Morton "not entirely credible in light of the treatment record and her daily activities." Tr. 20. The ALJ cited three bases for this conclusion.

The first and most significant is Morton's dismissal by her treating physician, Dr. Bangs. Tr. 17.  Dr. Bangs's treatment notes show suspicion of narcotic-seeking behavior by Morton over a fourteen month period. Tr. 189-196. In April 2002, an anonymous individual visited his clinic and accused Morton of abusing and selling her prescription opiates.  Tr. 187.  Morton claims she did not know why Dr. Bangs discharged her, but subsequent records cited by the ALJ indicate that she mislead her later practitioners about the nature of Dr. Bangs's decision. Tr. 236, 213. The ALJ acknowledged the incident was based upon allegation, but noted that, regardless, Morton's relationship with Dr. Bangs documented narcotic seeking behavior such as repeatedly phoning his office, claiming to have lost prescriptions, claiming her daughter discarded prescriptions and asking for post-dated prescriptions in violation of her drug contract with Dr. Bangs's clinic. Tr. 17, 98, 193.

The ALJ's assessment also cited  Morton's psychological profile which includes somatization and opioid dependence as assessed by examining psychologist Dr. Ugolini. Tr. 15, 212, 219.  Dr. Ugolini reiterated Morton's's history of expressing somatic and exaggerated complaints.  Tr. 212, 218, 219.  Finally, the ALJ noted the examining physician's conclusion that Morton is "hard to assess because she gives a poor effort,[2] and I cannot significantly evaluate her pain." Tr. 14,  208.  Malingering alone is reason to support a negative finding.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

---

[2]Morton refused to perform aspects of routine examination conducted by Dr. Ramsthel, such as walking on her heels; she gave poor effort in spinal flexion tests.  Tr. 207.

6 - OPINION AND ORDER

For these reasons the ALJ's findings regarding Morton's credibility are sufficiently specific to permit and require this court to conclude they are not arbitrary. *See Batson*, 359 F.3d at 1193. If the ALJ determines that the claimant is not credible, he may reject her pain testimony. *Magallanes*, 881 F.2d at 755.

## 2. The ALJ Properly Evaluated the Lay Witness Testimony

Morton contends that the ALJ improperly rejected the testimony of two lay witnesses. The ALJ has a duty to consider testimony of lay witness. 20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Dodrill*, 12 F.3d at 918. The ALJ may not reject such testimony without comment, but he may reject lay testimony that is inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If he rejects lay witness testimony entirely he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

Two of Morton's friends testified at her hearing regarding Morton's pain and restricted daily activities. Tr. 363-381. Both also submitted written statements to the record. Tr. 111-124. The first was Morton's ex-boyfriend, Shannon Colwell. Colwell's testimony focused upon his conviction that Morton was not exaggerating her pain symptoms and his assertion that Morton's dismissal by her treating physician was made in error. Tr. 365-371; 377-380. The second lay

witness was a neighbor, Sue Baker.  Baker related her observations about Morton's alleged level of pain and her inability to function in daily life due to this pain.  Tr. 372-376.

The ALJ did not reject their testimony outright, but assigned both  "little weight."  Tr. 18. He noted that Colwell is relying upon observation, that Baker had not known Morton long, and that neither "is a medical expert."  Tr. 18.

The ALJ must consider lay testimony in evaluating symptoms, but lay testimony alone cannot establish a medical diagnosis.  *Lewis*, 236 F.3d at 511-12.  The ALJ  may reject lay testimony that is inconsistent the  medical record.  *Id.*  Colwell's observations that Morton cannot attend family meals or independently shop and Barker's observation that Morton cannot fetch a glass or water without requiring rest are not consistent with the medical record and treatment notes established by Drs. Jimenez and Ramsthel. Tr. 370-1, 368, 222-240, 205-211.  The observations of Colwell and Baker do not establish that Morton's behavior is medically necessary rather than self-limiting.

The record specifically indicates that Morton *may have* anxiety, depression and chronic pain disorder, and that she does have obesity and a pain syndrome with a strong functional overlay.[3]  Her reports of manic depression and attention-deficit disorder are unsubstantiated, and she did not receive an undifferentiated diagnosis of fibromyalgia or any other condition that would account for her reported pain. Tr. 162, 219, 235, 180.  Notably, she gave poor effort upon examination and the examining physician reported increased pain behavior. Tr. 207-8. Her

---

[3]A "functional" illness indicates an illness of non-organic origin; i.e. potentially psychosomatic. *Stedman's Medical Dictionary*, 4th Lawyer's Edition, ed. William H.L. Dornette, W.H. Anderson Company, 1976.

narcotic-seeking behavior has been noted or alluded to by *every* treating, examining, and

reviewing physician in the record. Tr. 177, 189-96, 198, 208, 219, 223, 228, 229, 236, 246-8,

252, 255, 257, 276, 292, 297, 305, 309, 332, 335.  Read as a whole, the medical record affirms

the ALJ's finding that Morton is not entirely credible,  that her reports of pain are exaggerated,

and that her pain is largely functional[4] without dispositive effect on her ability to work.


### 3. Restrictions in Questions to Vocational Expert

Morton submits that the ALJ erred in omitting the limitations identified by her friends in

his hypothetical questions to the vocational expert (VE).  The ALJ must include all limitations

supported by substantial evidence in his hypothetical question to the VE, but he may exclude

unsupported limitations and disregard VE testimony based upon unsupported limitations. *Bayliss*

*v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65

(9th Cir. 2001).

Here the ALJ did not find the limitations Morton claims supported by the record, and so

did not err in excluding them from his hypothetical questions. *Magallanes*, 881 F.2d at 756-7.

The ALJ asked two hypothetical questions.  In the first, he cited the limitations found by Dr.

Ramsthel, including carrying twenty pounds occasionally and ten pounds frequently, an option to

sit or stand and only occasional bending, crawling and crouching. The second hypothetical

question included inconsistent work attendance and performance.  Tr. 382, 385.

Morton claims these scenarios did not take into account limitations described by her

---

[4]*Id*.

friends relating to her pain and fatigue. Because the ALJ did not find these additional limitations supported by the medical record, it was not error for the ALJ to exclude these limitations from his hypothetical questions. *Osenbrock,* 240 F.3d at 1163-5; *Magallanes,* 881 F.2d at 757.

The forgoing discussion shows that Morton has failed to show any error in the RFC assessment. The ALJ appropriately included all limitations identified in Morton's RFC assessment in his hypothetical questions to the vocational expert.

## CONCLUSION

The Commissioner's decision that Morton did not suffer from disability and is not entitled to benefits under title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case DISMISSED.

Dated this ___9th___ day of March, 2006.

                         ___/s/ Garr M. King_____
                         Garr M. King
                         United States District Judge